1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      Claude M. Stern (Bar No. 096737)
2       claudestern@quinnemanuel.com
      Evette D. Pennypacker (Bar No. 203515)
3       evettepennypacker@quinnemanuel.com
      Sayuri K. Sharper (Bar No. 232331)
4       sayurisharper@quinnemanuel.com
    555 Twin Dolphin Drive, Suite 560
5   Redwood Shores, California 94065-2139
    Telephone: (650) 801-5000
6   Facsimile: (650) 801-5100

7   Attorneys for Defendant
    Intuit Inc.

8

9                      UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12

13   TRACY DeFATTA d/b/a BOOKKEEPING          CASE NO.: 07-CV-04788-RS
     UNLIMITED, Individually and on behalf of
14   herself, all others similarly situated      INTUIT INC.'S OPPOSITION TO
                                                  MOTION TO REMAND CASE TO STATE
15                   Plaintiff,                   COURT, OR IN THE ALTERNATIVE,
                                                  PERMITTING PLAINTIFF TO ENGAGE
16         v.                                     IN LIMITED JURISDICTIONAL
                                                  DISCOVERY
17   INTUIT INC., and DOES 1 through 100,
     inclusive,                                   Date:      December 14, 2007
18                                                Time:      9:30 a.m.
                     Defendants.                  Courtroom: 4
19                                                Judge:     Hon. Richard Seeborg

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

III. ARGUMENT ........................................................................................................ 5

    A.   This Case Was Properly Removed Under CAFA ........................................ 5

    B.   Federal Jurisdiction is Presumptively Satisfied Because the Amount in
        Controversy Alleged in the Complaint Is In Excess of $5 Million ............... 6

    C.   Intuit Has Demonstrated By a Preponderance of the Evidence that the
        Amount in Controversy Is Over $5,000,000 ............................................... 8

    D.   Exceptions to Removal Do Not Apply To This Case. .................................. 12

    E.   Jurisdictional Discovery Is Unnecessary Because Intuit Has Submitted
        Sufficient Information to Resolve the Factual Questions ............................. 14

IV.  CONCLUSION .................................................................................................... 15

1

# TABLE OF AUTHORITIES

2                                                                                              **Page**

3
                                            **Cases**
4

*Abrego Abrego v. The Dow Chemical Co.,*
   443 F.3d 676 (9th Cir. 2006) ...................................................................................5, 14

*Butcher's Union Local No. 498 v. SDC Investment, Inc.,*
   788 F.2d 535 (9th Cir. 1986) .........................................................................................14

*Cohn v. Petsmart, Inc.,*
   281 F.3d 837 (9th Cir. 2002) ...........................................................................................9

*Cram v. Electronic Data Systems,*
   Civil No. 07cv1842-LAB(NLS), 2007 WL 2904250 (S.D. Cal. Oct. 3, 2007) .....................9

*Evans v. Walter Industries, Inc.,*
   449 F.3d 1159 (11th Cir. 2006) ......................................................................................12

*Kearns v. Ford Motor Co.,*
   No. CV 05-5644 GAF(JTLX), 2005 WL 3967998 (C.D. Cal. No. 21, 2005) ......................12

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,*
   199 F. Supp. 2d 993 (C.D. Cal. 2002) ...............................................................................5

*Levine v. BIC USA, Inc.,*
   No. 07 cv1096-LAB(RBB), 2007 WL 2406897 (S.D. Cal. Aug. 20, 2007) .............1, 5, 7, 8, 15

*Lowdermilk v. United States Bank Nat'l Assoc.,*
   474 F.3d 994 (9th Cir. 2007) .......................................................................................5, 7

*Muniz v. Pilot Travel Center LLC,*
   No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007).................5, 9, 15

*Rippee v. Boston Market Corp.,*
   408 F. Supp. 2d 982 (S.D. Cal. 2005)........................................................................5, 14, 15

*Sanchez v. Monumental Life Ins. Co.,*
   102 F.3d 398 (9th Cir. 1996) ...........................................................................................9

*Schwartz v. Comcast Corp.,*
   No. Civ. A. 05-2340, 2005 WL 1799414 (E.D. Pa. July 28, 2005)......................................14

*Serrano v. 180 Connect, Inc.,*
   478 F.3d 1018 (9th Cir. 2007) ........................................................................................13

*Sherer v. Equitable Life Assurance Society of the United States,*
   347 F.3d 394 (2nd Cir. 2003)............................................................................................5

1

## Statutes

2   28 U.S.C. § 1332(d) ..................................................................................................5, 13

3   28 U.S.C. § 1441(a) .......................................................................................................5

4   Cal. Bus. & Prof. Code §§ 17200 *et seq* ......................................................................2

5   Cal. Bus. & Prof. Code §§ 17500 *et seq* ......................................................................2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

In her Motion to Remand, Plaintiff Tracy DeFatta admits that Defendant Intuit Inc. has already met its burden with respect to two of the three factors necessary to show original federal jurisdiction over her "Class Action" Complaint under the Class Action Fairness Act: (1) the aggregate number of class members is 100 or greater and (2) a member of the putative class is a citizen of a different state than the Defendant. Plaintiff nevertheless attempts to avoid federal jurisdiction over her Complaint by arguing that evidence submitted with Intuit's Notice of Removal demonstrating that the aggregate amount in controversy exceeds the sum or value of $5 million is "unsubstantiated" and that the local controversy exception "may apply to this case." Neither of Plaintiff's arguments is supported by the facts, and Plaintiff's Motion to Remand should be denied. Indeed, as explained below, the relevant numbers overwhelmingly and indisputably contradict both of Plaintiff's theories for remand.

First, just like in the *Levine* case, Plaintiff's own allegations demonstrate that the amount in controversy exceeds the sum or value of $5 million. In her Complaint, Plaintiff alleges that "thousands of persons or entities in the United States" are putative class members and limits damages to the individual class members to "less than $75,000." Multiplying the maximum amount of recovery sought by each class member (*i.e.*, $74,999) by the number of potential putative class members (*i.e.*, 1,000) yields $74,999,999 — an amount in controversy far in excess of $5 million. As detailed below, analogous facts in *Levine* resulted in denial of plaintiff's remand motion there, and here should be the same result.

Second, Intuit has submitted undisputed evidence that demonstrates by a preponderance of the evidence that the amount in controversy exceeds $5 million. If each class member seeks recovery of the purchase price for their QuickBooks software, which is around $180, then Intuit need show only that the putative class will comprise 27,778 customers. And, if each class member seeks recovery of the purchase price for payroll services, which is around $150, then Intuit need show only that the putative class will comprise 33,333 customers. Calculations substantiated by publicly available information and explained by Intuit's Vice President of Finance demonstrate

1    that the number of businesses and individuals that might meet Plaintiff's class definition is likely

2    to be no less than 500,000.  Intuit has met its burden.

3          In the face of this evidence, Plaintiff spends most of her Motion to Remand arguing that

4    her case "may" meet exceptions under CAFA.  It does not.  Demographic evidence culled from

5    Intuit's business records demonstrates that only 13% of QuickBooks customers who might meet

6    Plaintiff's class definition have a California address.  Thus, not only does Plaintiff's case fail to

7    meet the automatic remand threshold, which requires that 2/3 of the putative class members share

8    the same residence as the forum state, but it also falls far from meeting even the discretionary 1/3

9    threshold.

10         Intuit has provided detailed factual evidence that shows Plaintiff's case is properly in

11   federal court.  No amount of discovery will save Plaintiff from this conclusion.  Plaintiff's Motion

12   to Remand and alternative request to engage in limited jurisdictional discovery should therefore be

13   denied in its entirety.

14   **II.    BACKGROUND**

15         **Diversity of the Parties.**  Intuit is a corporation organized under the laws of the State of

16   Delaware with its principal place of business in Mountain View, California.[1]  *See* Complaint, ¶ 7.

17   The named plaintiff, Tracy DeFatta, is a resident and citizen of Texas.  *See id.* ¶ 6.

18         **Nature of Plaintiff's Complaint.**  On August 8, 2007, Plaintiff filed a complaint styled

19   "Class Action" against Intuit in the Superior Court of California, County of Santa Clara.  In her

20   Complaint, Plaintiff alleges that certain of Intuit's upgrades to its QuickBooks financial software

21   "automatically locked out, blocked, deactivated or precluded from use the basic do-it-yourself or

22   manual entry payroll features or components previously available to QuickBooks consumers" on

23   certain versions of Intuit's QuickBooks software.  Complaint ¶ 1.  Plaintiff asserts claims for

24   alleged violation of California Business & Professions Code §§ 17200 *et seq.* and §§ 17500 *et*

25   *seq.*, breach of contract, and conversion.  *Id.* ¶ 20.  Plaintiff also seeks to certify a nationwide class

26   of Intuit customers "who owned QuickBooks financial software, Versions 2004 through 2006, on

27

28

---

[1]   The Complaint alleges erroneously that Intuit is a California corporation.

1  or before October 1, 2006 and who purchased and installed QuickBooks 2007 Software or

2  downloaded and installed an automatic upgrade to QuickBooks 2006 Software on or after October

3  1, 2006." *Id.* ¶ 17.

4      **Number of Putative Class Members.**  Plaintiff alleges on the face of her Complaint that

5  she believes the putative class exceeds 100 members.  For example, in her Complaint, Plaintiff

6  states: "Plaintiff Tracy DeFatta . . ., brings this Class Action Complaint on behalf of thousands of

7  QuickBooks consumers and businesses that purchased and installed QuickBooks 2007 Software

8  and/or downloaded and installed an automatic upgrade to QuickBooks Software beginning in late

9  2006."  Complaint at Nature of the Case; *see also* Complaint ¶ 19 ("Thousands of persons or

10  entities in the United States owned prior versions of the QuickBooks financial software, versions

11  2004 through 2006, on or before October 1, 2006.")

12      **Amount in Controversy.**  On behalf of the class, Plaintiff seeks (a) "Compensatory and

13  Consequential Damages according to proof"; (b) "an Order of Disgorgement and/or restitution in

14  an amount according to proof"; (c) "an Order preliminarily and permanently enjoining Defendants

15  from engaging in practice challenged" in the complaint; (d) "prejudgment interests to the extent

16  permitted by law"; (e) "an award of attorneys' fees, costs and expenses incurred in the

17  investigation, filing and prosecution of this Action."  Complaint at Prayer for Relief.  Plaintiff also

18  alleges putative class members have suffered "physical loss to their prior versions of QuickBooks

19  software and seek "restitution of money and/or property in which Plaintiff and class members have

20  a vested interest."  Complaint ¶¶13 and 39; *see also* ¶¶41 and 44 (seeking damages for Intuit's

21  alleged breach of contract for Plaintiff and Class Members' alleged purchase of QuickBooks

22  2007); ¶¶46 and 47 (seeking damages for Intuit's alleged interference "with the basic payroll

23  software features or components of QuickBooks financial software, version 2004 through 2006.")

24  Plaintiff alleges that the amount of monies that the Plaintiff and class members have "invested" in

25  Intuit's products takes either of two forms:

26      First, Plaintiff alleges that members of the class bought and owned QuickBooks 2004,

27  2005 or 2006.  Based on publicly available information, the price that this software would have

28  cost such customers, and the amount Plaintiff seeks "disgorgement" of, would be in the range of

$180 per product. Declaration of Kenneth Wach in Support of Intuit's Opposition to Motion to Remand ("Wach Decl.") ¶ 6. This fact is undisputed.

Second, Plaintiff alleges that members of the alleged class invested an additional $150.00 to $199.00 before sales taxes in Intuit's "fee-based payroll services options requiring annual (recurring) subscriptions with one-year fees for QuickBooks Standard Payroll." Complaint ¶4; *see also*, ¶16 ("QuickBooks financial software owners have incurred fees and costs and will continue to incur additional costs in the future, including, without limitation annual fee-based payroll services subscription fees and sales taxes associated with the Basic Payroll Lockout Scheme. Furthermore, Defendant's customers incurred other financial burdens, including but not limited to, damages associated [*sic*] the loss of software features or components."). This, too, is a dollar figure for which Plaintiff seeks "disgorgement."

Plaintiff also seeks injunctive relief and attorneys' fees and costs in connection with her class claim. Plaintiff further states in her Complaint:

> ***The amount in controversy alleged in this Complaint as to Plaintiff and each member of the Class does not exceed $75,000***, including interest and any award of attorneys' fees and costs. Plaintiff and each member of the Class disclaim any individual recovery greater than $75,000 . . ., and specifically limit their total claims to $75,000 or less for Plaintiff and each Class member. Complaint, p. 4 n. 1 (emphasis added).

**Location of QuickBooks Customers.** The estimated number of persons and entities in the United States who owned QuickBooks financial software Versions 2004 through 2006, on or before October 1, 2006 and who upgraded to QuickBooks 2007 Software was approximately 570,000. Declaration of Jeffrey J. McConnell in Support of Intuit's Opposition to Motion to Remand ("McConnell Decl.") ¶7. Of that total number, approximately 13% have a California address. *Id.* In addition, the number of overall QuickBooks customers who have a California address is approximately 13%. *Id.* at ¶8. On this basis, one could therefore reasonably infer that 13% of the QuickBooks customers who upgraded is also approximately 13%. *Id.*

III.    **ARGUMENT**

  A.  **This Case Was Properly Removed Under CAFA**

   A civil action filed in a state court may be removed to a federal district court if the district court had "original jurisdiction" over the matter. 28 U.S.C. § 1441(a); *see also Lowdermilk v. United States Bank Nat'l Assoc.*, 474 F.3d 994, 997 (9th Cir. 2007). As the party seeking to maintain federal jurisdiction over Plaintiff's class action complaint under CAFA, it is Intuit's burden to show: (1) the aggregate value of the claims exceeds $5,000,000; (2) there are at least 100 class members; and (3) any member of the plaintiff class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d); *see also Lowdermilk*, 474 F.3d at 997; *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006).

   Plaintiff *concedes* that there are at least 100 putative class members and any member of the plaintiff class is a citizen of a state different from any defendant in this case. *See* Motion to Remand, 3-5. Plaintiff's only argument in support of her motion to remand is that Intuit has not put forth sufficient evidence to meet its burden to show that the amount in controversy exceeds $5 million. Plaintiff is incorrect.

   In measuring the amount in controversy, the relevant inquiry is the amount that is put "in controversy" by the plaintiff's complaint, and not what a defendant will actually owe a successful plaintiff. *Levine v. BIC USA, Inc.*, No. 07 cv1096-LAB(RBB), 2007 WL 2406897, at *2 (S.D. Cal. Aug. 20, 2007) (citing *Sherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 397-98 (2nd Cir. 2003)); *see also Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005). Thus, "for purposes of remand, the court must accept as true *plaintiff's* allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002); *Rippee*, 408 F. Supp. 2d at 986).

   Something Plaintiff ignores in her Motion to Remand is that the level of proof Intuit must provide to demonstrate that the amount in controversy exceeds $5 million depends on the contents of Plaintiff's pleading. In *Lowerdermilk*, 479 F.3d at 998-99, the court discusses three possible

1  fact patterns: (1) if the complaint alleges damages in excess of $5 million, then "the requirement

2  is presumptively satisfied unless 'it appears to a legal certainty that the claim is actually for less.'";

3  (2) if the complaint fails to plead a specific amount of damages, then the defendant must "prove by

4  a preponderance of evidence" that the amount in controversy exceeds $5 million; and (3) if the

5  complaint alleges damages less than the jurisdictional amount, then the defendant must overcome

6  the presumption against federal jurisdiction and prove the amount to a legal certainty.

7          In this case, Plaintiff alleges in her Complaint that the amount in controversy exceeds $5

8  million, and the amount in controversy requirement is therefore presumptively satisfied.

9  However, even if Plaintiff did not allege damages in excess of $5 million (she does), as will be

10  shown below, Intuit has demonstrated by a preponderance of the evidence that the amount in

11  controversy exceeds $5 million. Accordingly, this Court has original jurisdiction over Plaintiff's

12  Complaint, and Plaintiff's Motion to Remand should be denied.

13          **B.      Federal Jurisdiction is Presumptively Satisfied Because the Amount in
                 Controversy Alleged in the Complaint Is In Excess of $5 Million**

14

15          In her Motion to Remand, Plaintiff argues that the Complaint is "silent as to a specific

16  amount placed into controversy." Motion to Remand at 4. This is not the case. Plaintiff

17  acknowledges that the Complaint includes a disclaimer that no individual putative class member

18  would recover an amount in excess of $75,000. *Id.* In particular, Plaintiff states in her Complaint:

19          ***The amount in controversy alleged in this Complaint as to Plaintiff and each
            member of the Class does not exceed $75,000,*** including interest and any award
            of attorneys' fees and costs. Plaintiff and each member of the Class disclaim any
20          individual recovery greater than $75,000 . . ., and specifically limit their total
            claims to $75,000 or less for Plaintiff and each Class member.

21

22  Complaint, 4 n.1 (emphasis added).

23          This disclaimer places Plaintiff's case squarely in the scenario where the minimum

24  jurisdictional requirement is presumptively satisfied. Plaintiff admits that the alleged class is in

25  excess of 1,000 members. *See* Complaint at Nature of the Case ("Plaintiff Tracy DeFatta . . .

26  brings this Class Action Complaint on behalf of thousands of QuickBooks consumers and

27  businesses that purchased and installed QuickBooks 2007 Software and/or downloaded and

28  installed an automatic upgrade to QuickBooks Software beginning in late 2006."); *see also*

1  Complaint ¶ 19 ("Thousands of persons or entities in the United States owned prior versions of the

2  QuickBooks financial software, versions 2004 through 2006, on or before October 1, 2006").

3  Multiplying the maximum amount of recovery (*i.e.*, $74,999) by the minimum number of putative

4  class members alleged in Plaintiff's Complaint (*i.e.*, 1,000), yields an amount in controversy

5  significantly in excess of $5 million (*i.e.*, $74,999,000). Thus, the facts alleged in Plaintiff's

6  Complaint alone demonstrate that the amount in controversy exceeds $5 million in this case.

7          The court in *Levine* concluded that the amount in controversy requirement was

8  presumptively met under identical facts. Notably, Intuit cited and discussed *Levine* in its Notice of

9  Removal (Notice of Removal at 4), but Plaintiff failed to address *Levine* in its Motion to Remand.

10 In *Levine*, like here, the plaintiff pled "that the amount in controversy does not exceed

11 $74,999.999 as to Plaintiff or any other Class Member" *Levine*, 2007 WL 2405897, at *4 (internal

12 citations omitted). In *Levine*, like here, the plaintiff did not dispute that the numerosity or the

13 minimal diversity requirement under CAFA had been satisfied, and challenged only the amount in

14 controversy requirement. *Id.* at *1. Both parties proceeded as if the plaintiff had not pled an

15 amount in controversy, and that the defendant had to satisfy the amount in controversy

16 requirement by a preponderance of evidence to defeat the motion. *Id.* at *3. The court, however,

17 took the position that the plaintiff had pled a specific amount in the form of the disclaimer. The

18 court found that this amount was in excess of the jurisdictional requirement, and held that the

19 presumption of jurisdiction applied:

20          [T]he court concludes Levine has plead "a specific amount in damages" within the
           four corners of the complaint by averring "the amount in controversy does not
21         exceed $74,999.99 as to Plaintiff or any other Class Member", even though (as in
           *Lowdermilk*) the dollar amount is a "not in excess of" contention. Therefore, "the
22         preponderance of the evidence standard does not apply." .... Even though Levine
           does not plead any aggregate total amount of the claims, multiplying that express
23         maximum figure per class member by the undisputed minimum class size of 100
           members, from the face of the FAC the amount in controversy exceeds the CAFA
24         jurisdictional minimum. *Id.* at *4.
25
26          Based on the presumption, the court then held that "it need not look beyond the

27 [complaint]" to determine that the amount in controversy requirement has been met, and denied

28

1    the plaintiff's motion to remand. *Id.* at *4-5. The reasoning in *Levine* applies equally to the facts

2    of this case (which are identical), and Plaintiff's Motion to Remand should be denied.

3    **C.    Intuit Has Demonstrated By a Preponderance of the Evidence that the Amount in Controversy Is Over $5,000,000**

4

5         Even if the Court finds that the specific amount in controversy is not expressly set forth on

6    the face of Plaintiff's Complaint, the Court should still deny Plaintiff's Motion to Remand. Intuit

7    has submitted evidence, both with its Notice of Removal and with the present opposition

8    memorandum, that demonstrates by a preponderance of the evidence that the aggregate amount of

9    damages claimed is in excess of $5 million. In particular, Intuit provided the Declaration of Ken

10   Wach, Intuit's Vice President of Finance, with its Notice of Removal ("Wach Removal Decl.").

11   Dkt. No. 3. In that Declaration, Mr. Wach calculated the number of QuickBooks 2004, 2005 and

12   2006 owners who likely upgraded to QuickBooks 2007 and the amount of individual damages

13   Plaintiff alleged in her Complaint and concluded that the amount in controversy was likely to far

14   exceed $5 million. Wach Removal Decl. ¶4. In her Motion to Remand, Plaintiff complains that

15   Mr. Wach's removal declaration "fails to explain the methodology employed to obtain this

16   estimate, identify the source(s) of information from which the estimate was derived, and provide

17   any evidence that these estimates evolved from accurate, unbiased and objective data." Motion to

18   Remand at 5. However, Plaintiff does *not* dispute the accuracy of Mr. Wach's conclusions,

19   provide any evidence to show that those conclusions are inaccurate, or seek discovery to test Mr.

20   Wach's conclusions.

21        Mr. Wach's removal declaration alone is sufficient to demonstrate that the amount in

22   controversy exceeds $5 million in this case. Nevertheless, Intuit submits with this opposition, a

23   supplemental declaration from Mr. Wach that further explains his calculations and sources of

24   information. Intuit also submits the declaration of Jeffrey J. McConnell, a Staff Business Analyst

25   at Intuit, who provides analysis of Intuit customer data from a marketing perspective (and reaches

26   the same conclusions that Mr. Wach did from a finance perspective). These three declarations

27   more than meet Intuit's burden here.

28

1    The preponderance of the evidence standard is not a "daunting" burden — it means

2 evidence establishing that it is "more likely than not" that the amount in controversy exceeds the

3 jurisdictional amount. *See Muniz*, 2007 WL 1302504, at *2 (citing *Sanchez v. Monumental Life

4 *Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). To determine whether Intuit has met this burden, the

5 Court may consider both the evidence Intuit submitted in support of its Notice of Removal and the

6 additional evidence Intuit submits with this opposition to Plaintiffs Motion to Remand. *See*

7 *Muniz*, 2007 WL 1302504, at *3 (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir.

8 2002). Intuit has no obligation to support removal with production of extensive business records.

9 *Id.* at *5. *See also Cram v. Electronic Data Systems*, Civil No. 07cv1842-LAB(NLS), 2007 WL

10 2904250, at *4 (S.D. Cal. Oct. 3, 2007). Thus, detailed declarations that explain the relevant

11 calculations, like those Intuit submits in support of removal here, are sufficient — Intuit need not

12 produce the underlying documents that support its calculations to defeat Plaintiff's Motion to

13 Remand. *Muniz*, 2007 WL 1302504, at *4. Moreover, for purposes of this analysis, the Court

14 must assume that plaintiff will prove liability and recover the damages alleged — it makes no

15 difference whether the actual recovery may be much less than the theoretical amount of recovery

16 gleaned from the allegations in the Complaint. *See Muniz*, 2007 WL 1302504, at *3.

17    To determine the amount in controversy here, the number of class members must be

18 calculated and the amount of damages sought for each determined.[2] Plaintiff defines the alleged

19 "class" on behalf of which suit is brought as: "All persons and entities in the United States

20 (excluding Defendant, its affiliates and all governmental entities) who owned QuickBooks,

21 financial software, Versions 2004 through 2006, on or before October 1, 2006 and who purchased

22 and installed QuickBooks 2007 Software or downloaded and installed an automatic upgrade to

23 QuickBooks 2006 Software on or after October 1, 2006." Complaint ¶ 17. To estimate the

24 potential number of individuals or entities that might comprise the class as Plaintiff has defined it

25    _____

26    [2] By providing an estimate of the class size as defined in the Complaint, Intuit does not
concede and in fact disputes that it has done anything wrong, that anyone was injured by the
27 alleged wrongful conduct, or that Plaintiff has established all of the requirements to establish a
class action under FRCP Rule 23.
28

1 | in her Complaint, Intuit asked its Vice President of Finance and a Staff Business Analyst in its

2 | direct marketing group to analyze data available to Intuit from two different perspectives.

3 | First, Intuit's Vice President of Finance, Ken Wach, approximated the number of units of

4 | QuickBooks 2004, 2005 and 2006 Intuit sold. Wach Decl. ¶ 4; Wach Removal Decl. ¶ 3 . To

5 | determine this number, Mr. Wach relied on information in a publicly available fact sheet that

6 | Intuit provides to investors that includes unit sales data by quarter for fiscal years 2004-2006.

7 | Wach Decl. ¶ 4. According to the Intuit Investor Fact Sheet, Intuit sold approximately 1.1 million

8 | units of QuickBooks in its fiscal year 2004, 1.3 million units in fiscal year 2005, and 1.5 million

9 | units in fiscal year 2006. Wach Decl., Ex. A, p.2 (Total QuickBooks software units sold). Thus,

10 | Mr. Wach estimated that 3.9 million persons or entities owned QuickBooks 2004, 2005, and 2006.

11 | *Id.* ¶ 4; Wach Removal Decl. ¶ 3.

12 | Mr. Wach next estimated that, out of those 3.9 million customers, significantly more than

13 | 27,778 - 33,333 persons or entities upgraded their 2004, 2005, 2006 QuickBooks to the 2007

14 | version and that this number is most likely no less than 500,000. Wach Decl. ¶ 5; Wach Removal

15 | Decl. ¶ 3. Mr. Wach arrived at this estimate first by looking at the Intuit Investor Fact Sheet for

16 | fiscal year 2007, which shows that Intuit sold about 1.7 million units of QuickBooks in fiscal year

17 | 2007. Wach Decl. at Ex. B, p.2 (Total QuickBooks software units sold). QuickBooks customers

18 | typically upgrade their software between 2 to 3 years after their previous version purchase, and

19 | approximately 50% of customers upgrade within 3 years of their previous version purchase. *Id.* ¶

20 | 5. In addition, of the 1.7 million units of QuickBooks sold in fiscal year 2007, approximately one

21 | million units were sold to existing QuickBooks customers. *Id.* Based on these upgrade timing

22 | patterns, Mr. Wach estimated that, of the one million 2007 QuickBooks units sold to existing

23 | QuickBooks customers, the number of those customers that upgraded from QuickBooks version

24 | 2004, 2005 or 2006 would likely be no less than 500,000. *Id.*

25 | Intuit also analyzed customer product registration data to estimate the number of

26 | QuickBooks customers who owned QuickBooks version 2004, 2005 or 2006 and upgraded to

27 | QuickBooks 2007. *See* McConnell Decl. ¶ 7. Intuit's customer data includes data for customers

28 | who ordered QuickBooks directly from Intuit and who registered their products with Intuit; it does

1    not include customers who purchased QuickBooks through a retail outlet and did not register with

2    Intuit. *Id.* ¶ 5. It also does not include customers who installed an automatic upgrade. *Id.*

3    Therefore, any estimate based on this database is conservative, as there are actual customers who

4    are not included in the database. Intuit routinely relies on the information in the database used for

5    this analysis for direct marketing campaigns and other messaging to its QuickBooks customers.

6    *Id.* ¶ 3. Thus, although the database is missing some information that might be relevant to

7    Plaintiff's definition of the putatitve class, it is the most comprehensive set of data Intuit relies

8    upon for its own business purposes. *Id.* ¶¶ 3, 5. Based on its analysis of that data, Intuit estimates

9    that over 570,000 individuals or entities owned QuickBooks 2004, 2005 or 2006 and upgraded to

10   QuickBooks 2007. *Id.* ¶ 7.

11        The second part of determining whether this case has at least $5 million in controversy is

12   to determine the type of damages Plaintiff is alleging. Plaintiff, on behalf of the class, seeks (a)

13   "Compensatory and Consequential Damages according to proof"; (b) "an Order of Disgorgement

14   and/or restitution in an amount according to proof"; (c) "an Order preliminarily and permanently

15   enjoining Defendants from engaging in practice challenged" in the complaint; (d) "prejudgment

16   interests to the extent permitted by law"; (e) "an award of attorneys' fees, costs and expenses

17   incurred in the investigation, filing and prosecution of this Action." Complaint at Prayer for

18   Relief; *see also* Complaint ¶20d. Plaintiff also alleges putative class members have suffered

19   "physical loss to their prior versions of QuickBooks software and seek "restitution of money

20   and/or property in which Plaintiff and class members have a vested interest." Complaint ¶¶13 and

21   39; *see also* ¶¶41&44 (seeking damages for Intuit's alleged breach of contract for Plaintiff and

22   Class Members' alleged purchase of QuickBooks 2007); ¶¶46&47 (seeking damages for Intuit's

23   alleged interference "with the basic payroll software features or components of QuickBooks

24   financial software, version 2004 through 2006.") Plaintiff alleges that the amount of monies that

25   the Plaintiff and class members have "invested" in Intuit's products takes either of two forms:

26        (1) Plaintiff alleges that members of the class bought and owned QuickBooks 2004,

27   2005 or 2006. Based on publicly available information, the price that this software would have

28   cost such customers would have been in the range of $180 per product. Wach Removal Decl. ¶ 4.

1        (2) Plaintiff alleges that members of the alleged class invested an additional

2   $150.00 to $199.00 before sales taxes in Intuit's "fee-based payroll services options requiring

3   annual (recurring) subscriptions with one-year fees for QuickBooks Standard Payroll." Complaint

4   ¶4; *see also*, ¶16 ("QuickBooks financial software owners have incurred fees and costs and will

5   continue to incur additional costs in the future, including, without limitation annual fee-based

6   payroll services subscription fees and sales taxes associated with the Basic Payroll Lockout

7   Scheme.  Furthermore, Defendant's customers incurred other financial burdens, including but not

8   limited to, damages associated [*sic*] the loss of software features or components.").  Plaintiff is

9   also seeking injunctive relief and attorneys' fees and costs in connection to her class claim.

10        Either form of potential damages would yield an amount in controversy in this case that

11   would exceed $5 million.  In particular, for recovery based on $180, the aggregate amount in

12   controversy is greater than $5 million if the class size is greater than 27,778.  Wach Decl. ¶ 6;

13   Wach Removal Decl. ¶4 .  Alternatively, for recovery of $150, the aggregate amount in

14   controversy is greater than $5 million if the class size is greater than 33,333.  Wach Decl. ¶ 6;

15   Wach Removal Decl.¶ 4.  Thus, to reach an amount in controversy of at least $5 million, Intuit

16   need show only that, of the 3.9 million persons or entities who owned QuickBooks 2004, 2005,

17   and 2006, more than 27,778 - 33,333 persons or entities, or less than 1% of the relevant installed

18   base, upgraded their software to 2007 version.  Wach Decl. ¶ 6.  Intuit's data, analyzed from either

19   a finance or a marketing perspective, indicates that the number of persons or entities who

20   upgraded is likely no less than *500,000*.  Intuit has more than met its burden to show, by a

21   preponderance of the evidence, that the amount in controversy in this case is in excess of $5

22   million.  Plaintiff's Motion to Remand should be denied.

23       **D.**    **Exceptions to Removal Do Not Apply To This Case.**

24        Plaintiff argues that "The 'Home State' exception to removal under CAFA *may* apply to this

25   case." Motion to Remand at 5 (emphasis added).  Congress did provide certain narrow exceptions

26   so that "truly local controversy" may be heard in a state court.  *See Evans v. Walter Industries,*

27   *Inc.*, 449 F.3d 1159, 1163-64 (11th Cir. 2006); *Kearns v. Ford Motor Co.*, No. CV 05-5644

28   GAF(JTLX), 2005 WL 3967998, at * 6 (C.D. Cal. Nov. 21, 2005).  These exceptions, as set forth

1  in §§ 1332(d)(3) and (4), are not part of the prima facie case for establishing original jurisdiction

2  under CAFA, and the burden to establish that these exceptions apply falls to the plaintiff who is

3  seeking remand. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021-22 (9th Cir. 2007).

4       A district court can decline jurisdiction under three exceptions:  (1) the home state

5  exception, § 1332(d)(4)(B); (2) the local controversy exception, § 1332(d)(4)(A); and (3) interest

6  of justice exception, § 1332(d)(3).  *Id.* at 1022.  The home state exception applies only if "two-

7  third or more of the members of all proposed plaintiffs classes in the aggregate ... are citizens of

8  the State in which the action was originally filed."  § 1332(d)(4)(B).  The local controversy

9  exception applies only if "greater than two-thirds of the members of all proposed plaintiff classes

10 in the aggregate are citizens of the State in which the action was originally filed."  §

11 1332(d)(4)(A).  And, the interest of justice exception applies only if "greater than one-third but

12 less than two-thirds of the members of the proposed plaintiff classes in the aggregate ... are

13 citizens of the State in which the action was originally filed."  § 1332(d)(3).  Thus, in this action,

14 there can be no exception unless at least one-third of the proposed class members as defined by the

15 Plaintiff are citizens of California.

16      Intuit analyzed customer data stored in its most comprehensive database relied upon for

17 messaging to its customers to determine the geographic location of Intuit customers that might

18 meet Plaintiff's definition of the putative class.  Although, this database contains only a subset of

19 all QuickBooks customers, it is the most comprehensive customer database Intuit has available to

20 it, and Intuit relies on this database to communicate to its installed base, including generating

21 mailing lists for direct marketing campaigns.  McConnell Decl. ¶ 3.  This is the same database

22 that Intuit used to determine that more than 570,000 persons or businesses owned 2004, 2005, or

23 2006 versions of QuickBooks and later upgraded to the 2007 version, as discussed above.  *See*

24 *supra* III C.  Of those approximately 570,000 persons or businesses, approximately 13% had a

25 California address.  McConnell Decl. ¶ 7.  Although Intuit cannot tell if the address is a residence

26 or some form of business or related address, Intuit does know that the address is associated with

27 the customer and is the location filled in by the purchaser under the "address" record.  *Id.*

28 Moreover, even though the identified 570,000 persons or businesses represent a subset of the total

1  putative class as defined in Plaintiff's Complaint, there is no reason to believe that the

2  geographical distribution of the total alleged class is any different from this subset.  In fact,

3  analysis of this database showed that the number of overall QuickBooks customers who have a

4  California address is also approximately 13%.  *Id.*

5         Based on this data, Plaintiff cannot meet her burden to establish that any of the three

6  exceptions to CAFA jurisdiction apply — 13% is far short of the one-third, or 33%, that is

7  required.  Plaintiff's Motion to Remand should be denied.

8    **E.    Jurisdictional Discovery Is Unnecessary Because Intuit Has Submitted**
         **Sufficient Information to Resolve the Factual Questions**

9

10        This Court should deny Plaintiff's request for limited jurisdictional discovery because the

11  information that Intuit has provided under oath conclusively establishes that none of the

12  exceptions apply.  *See* McConnell Decl. ¶ 7.  Although limited jurisdictional discovery may be

13  appropriate prior to remand in some cases, such discovery is discretionary, and is plainly not

14  necessary here.  *Albrego Albrego*, 443 F.3d at 691.  Jurisdictional discovery is permissible when a

15  court is unable to determine on the existing record whether it has jurisdiction.  *See Rippee v.*

16  *Boston Market Corp.*, 408 F. Supp. 2d 982, 985 (S.D. Cal. 2005) (internal citations omitted).  It is

17  most appropriate "where 'pertinent facts bearing on the question of jurisdiction are controverted or

18  where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498 v.*

19  *SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).  These situations do not exist here.

20        Intuit has already provided the pertinent facts that Plaintiff is seeking to resolve

21  jurisdictional question — based on data Intuit relies on in its ordinary course of business, Intuit

22  estimates that about 13% of the alleged putative class has a California address.  This information

23  is sufficient to show that none of the CAFA exceptions apply to this case.  No additional

24  information is necessary for this Court to reach that determination.  Indeed, this is not even a close

25  call.

26        This case does not, therefore, have "remarkably similar facts to those asserted by" the

27  plaintiff in *Schwartz v. Comcast Corp.*, No. Civ A. 05-2340, 2005 WL 1799414 (E.D. Pa. July 28,

28  2005).  *See* Motion to Remand at 7.  There is nothing in that decision to suggest that the defendant

1  in that case had provided any information to the plaintiff or the court to support its position that

2  the home state exceptions did not apply.  Rather, the defendant in that case relied entirely upon its

3  interpretation of the plaintiff's class definition.  Here, Intuit used Plaintiff's definition of the

4  putative class to analyze its business records to determine whether any of the home state

5  exceptions apply here.  Intuit's analysis, which has been provided to this Court with the present

6  opposition memorandum, definitively demonstrates that no exceptions apply.

7       Further, the discovery that Plaintiff requests, production of "any and all DOCUMENTS

8  and/or writings containing information as to each CLASS MEMBER'S State of citizenship" is

9  overly broad and burdensome.  In *Rippee,* the court noted that "jurisdictional determination should

10  be made largely on the basis of *readily available information,*" and that "it would in most cases be

11  improper for the named plaintiffs to request that the defendant produce a list of all class

12  members."  *Rippee,* 408 F. Supp. 2d at 985.  Accordingly, less burdensome means, such as factual

13  stipulations, should be used to create a record to determine jurisdiction.  *Id.*  Intuit has already

14  provided this "less burdensome means" in the form of sworn declarations.  Any additional

15  discovery would serve no useful purpose.

16       Additional discovery is unnecessary when declarations are sufficient to show by a

17  preponderance of evidence that jurisdictional requirement has been met.  *See Muniz,* 2007 WL

18  1302504, at *5 (the court denied plaintiff's motion to remand, holding that defendant met its

19  burden to show that the amount in controversy requirement has been met by filing declarations in

20  support of its notice of removal and supplemental declarations in support of its opposition

21  motion); *see also Levine,* 2007 WL 2406897, at *4 (the court held that "even were the court to

22  apply the preponderance of the evidence standard," the declarations submitted substantiated "it is

23  'more likely than not' the amount in controversy exceeds $5 million dollars, irrespective of

24  [plaintiff's] argument that sales and profits totals are not the appropriate measure of damages").

25  Therefore, this Court should also deny Plaintiff's request to engage in jurisdictional discovery.

26  **IV.**    **CONCLUSION**

27       For all the foregoing reasons, Intuit respectfully requests that this Court deny Plaintiff's

28  Motion to Remand and Plaintiff's request for jurisdictional discovery.

1

2  DATED:  November 21, 2007        QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
3

4                                   By_/s/Claude M. Stern_____
5                                      Claude M. Stern
                                       Attorney for Intuit Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28